Richard L. CHENOWITH

v.

**ASPLUNDH TREE EXPERT CO.**

No. K–95–2860.

United States District Court, D. Maryland.

June 11, 1996.

John G. Koenig, Jr., Columbia, Maryland, for plaintiff.

Mark D. Laponsky, Baltimore, Maryland, and Willis Gunther Ferlise, Towson, Maryland, for defendant.

FRANK A. KAUFMAN, Senior District Judge.

Defendant employed plaintiff under the terms of a collective bargaining agreement, the terms of which gave plaintiff's union binding authority to decide whether or not to submit an employee's grievance to arbitration. Defendant has moved for summary judgment, contending that the arbitration provision and the union's decision not to seek arbitration on plaintiff's behalf preclude plaintiff from filing suit in this Court pursuant to the Age Discrimination in Employment Act of 1967 (ADEA). Defendant also contends that, in any event, the undisputed facts of this case entitle defendant to summary judgment on the merits of plaintiff's claim. For the reasons set forth in this opinion, this Court will grant that motion.

I

The following facts are, in all material respects, undisputed. Plaintiff, Richard L. Chenowith, born on September 9, 1949, was employed periodically by defendant, Asplundh Tree Expert Co., beginning in 1967. His most recent date of hire was July 25, 1990. He served as a "journeyman," typically the most experienced worker on a four-person crew, aside from the crew foreman. A journeyman's job responsibilities include climbing trees, acting as crew foreman in the absence of the foreman, and assisting in training less experienced workers. On October 15, 1993, plaintiff was serving as a journeyman on a four-person crew. His supervisor asked him to climb a tree and to place a rope in preparation for cutting down the

tree, and plaintiff refused. The supervisor left to call his own immediate supervisor, and when he returned, he told plaintiff that his time had been stopped, meaning that plaintiff would not be paid for the remainder of the day. At that point, the parties disagree as to whether plaintiff quit or was fired. Both sides agree that, on plaintiff's request, the supervisor then drove plaintiff back to plaintiff's personal vehicle. Plaintiff contends that, by stopping his time, defendant effectively fired him. Although defendant disputes that contention and claims that plaintiff quit, for the purposes of defendant's motion for summary judgment, this Court will assume that defendant fired plaintiff for refusing to climb the tree.

According to plaintiff, the supervisor, before asking him to climb the tree, directed a younger worker, Marty Hopwood, to climb the same tree. Mr. Hopwood was a trainee, the least experienced member of the crew.[1] Plaintiff claims that Mr. Hopwood refused to climb the tree but that he was not fired.

A collective bargaining agreement (CBA) governed the terms of plaintiff's employment, including the right of management "to re-quire efficient service from employees" and to take disciplinary measures for "gross insubordination." *See* CBA at 14–15. The CBA established an exclusive procedure for the settlement of any "grievance," defined as "a dispute or controversy between the parties as to the interpretation or application of this Agreement." *Id.* at 16. That procedure required the employee first to discuss the grievance with his immediate supervisor and, if that step failed to resolve the issue, to put the grievance in writing for discussions between representatives of the union and the company. If that step failed, the CBA provided that "either party may submit the grievance to arbitration ... The decision of the UNION not to submit a grievance to arbitration shall be *binding* upon the employees." *Id.* at 17 (emphasis supplied).[2]

In the within case, plaintiff timely put his grievance in writing, but, after consultation with a union representative, the company denied the grievance.[3] The union then chose not to submit the grievance to arbitration.

Plaintiff filed a timely charge of discrimination with the Maryland Commission on Human Relations and the federal Equal Em-

---

1. Defendant maintains five levels for its employees who work on crews: the foreman, the journeyman, the apprentice climber, the ground man, and the trainee.

2. Article XIX of the CBA reads as follows:

   For the purpose of this Agreement, a grievance is defined as a dispute or controversy between the parties as to the interpretation or application of the Agreement. The following procedure shall be followed exclusively in the settlement of all grievances arising under this Agreement:
   (A) The employee involved and/or the Shop Steward shall discuss the grievance with the immediate supervisor involved within forty-eight (48) hours after the grievance arises.
   (B) If not settled under Step A within three (3) days after it arises, the grievance shall be immediately reduced to writing and shall be taken up between an authorized representative of the UNION and the COMPANY.
   (C) If not settled under Step (B) within ten (10) days after the grievance has been reduced to writing, either party may submit the grievance to arbitration by invoking Paragraph 2 of this Article within thirty (30) days after the grievance has been reduced to writing. The decision of the UNION not to submit a grievance to arbitration shall be binding upon the employees. Grievances shall not be processed during an employee's working hours except by consent of the parties.
   The parties shall make every effort to select a mutually satisfactory arbitrator.
   If the parties are unable to agree upon a mutually satisfactory arbitrator, either may submit the matter to the American Arbitration Association for selection of an arbitrator in accordance with its rules.
   The arbitrator shall have no right to add to, subtract from, alter, amend, or modify any of the terms of this Agreement; nor shall his authority exist or extend in any way beyond the expiration date of this Agreement.
   A decision of the arbitrator, not inconsistent with the terms of this Agreement, shall be final and binding upon the COMPANY, UNION, and employees.
   The cost of an arbitration proceeding and all attorney fees up to two hundred dollars ($200.00) shall be borne by the loser of the arbitration.

3. Defendant has suggested in its brief that the union, not the company, denied the grievance. The record is not clear on this point, but, in any event, the parties, including plaintiff, have not suggested that the union's subsequent decision not to seek arbitration is other than binding upon plaintiff.

ployment Opportunity Commission (EEOC) on the grounds that he was terminated because of his age. After the EEOC determined that it could not conclude that defendant had violated the ADEA, and issued a right to sue letter, plaintiff timely filed the within suit in this Court. Defendant then has moved for summary judgment.

## II

The Fourth Circuit recently concluded in a 2–1 decision that, in a case where an employee's claims under Title VII and the Americans with Disabilities Act (ADA) were subject to mandatory arbitration under a collective bargaining agreement, the employee was precluded from obtaining relief in federal court on the merits of her case. *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996). In *Austin,* the plaintiff's employment was governed by a collective bargaining agreement, which provided that claims of discrimination were subject to the company's grievance procedure and stated that the "Company and the Union will comply with all laws preventing discrimination against any employee because of ... age, handicap ..." *Id.* at 879.[4] Under the CBA, all disputes not settled under the grievance procedure "may be referred to arbitration by a notice given to the company or the union by the other ..." *Id.* at 880. The plaintiff alleged that she had been terminated in violation of Title VII and the Americans with Disabilities Act, but she did not avail herself of the grievance-arbitration procedure. The district court granted summary judgment to the defendant.

On appeal, writing for the majority, Judge Widener concluded that the arbitration provision was mandatory, not permissive, writing: "If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include ... the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration." *Id* at 879. Judge Widener then considered whether the

arbitration provision was enforceable in the case at hand. He noted the "well-recognized policy of federal labor law favoring arbitration of labor disputes." *Id.* at 879 (quoting *Adkins v. Times–World Corp.,* 771 F.2d 829, 831 (4th Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986)). He concluded that under the statutes at issue—Title VII and the ADA—employees and employers could agree prospectively to arbitrate certain statutory claims of an employee. He specifically indicated that the fact that the arbitration clause was contained in a collective bargaining agreement did not prevent the arbitration clause from being enforceable in a suit involving Title VII or the ADA. *Id.* at 885.

Judge Hall, in dissent, wrote that "[a] labor union may not prospectively waive a member's individual right to choose a judicial forum for a statutory claim." *Id.* at 886 (Hall, J. dissenting). He relied, *inter alia,* on *Tran v. Tran,* 54 F.3d 115 (2d Cir.1995) (Kaufman, J., sitting by designation), *cert. denied.* In *Tran,* the district court granted summary judgment to the defendants as to the plaintiff's claim under the Fair Labor Standards Act (FLSA) on the grounds that plaintiff had failed to seek to arbitrate those claims. The Second Circuit, relying on the Supreme Court's opinion in *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), reversed and concluded that plaintiff was entitled to have his wage hour claims considered on the merits in the district court. The majority in *Austin* distinguished *Tran,* in part at least on the grounds that *Tran* involved a dispute under the FLSA, a statute which does not specifically encourage arbitration. *Austin,* 78 F.3d at 882 n. 2.

*Austin* arose in the context of Title VII and the ADA. However, arbitration provisions seemingly similarly preclude an action under the ADEA. The Supreme Court has specifically concluded that, at least in a noncollective bargaining setting, employers and

---

4. The arbitration clause in the case at bar is very broad; it covers all disputes "as to the interpretation or application" of the CBA. But it does not specifically refer to disputes involving an employee's statutory claims as does the arbitra-

tion provision in *Austin.* Still, the arbitration clause before us would seem to encompass all claims related to the employment at hand, including claims under the ADEA.

employees can prospectively agree to submit an ADEA claim to binding arbitration. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), interpreting the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., *id.* at 24–26, 111 S.Ct. at 1651–52, affirming the Fourth Circuit's opinion below. The Fourth Circuit had reversed the District Court and rejected the latter's view that Congress had intended, in enacting the ADEA, not to permit an arbitration provision to deprive an employee of his day in court on the merits of an ADEA dispute. *See id.* at 24, 111 S.Ct. at 1651.

One distinction between *Austin* and the within case is that in *Austin* the plaintiff chose not to avail herself of the grievance-arbitration procedure, while in this case plaintiff filed a grievance, but the union, pursuant to the CBA, chose not to submit it to arbitration despite the plaintiff's desire to proceed to arbitration. In that context, plaintiff points out that dismissal of his statutory ADEA claim here would mean that he will never have his day in court or in any forum, with regard to that claim, even though, unlike the plaintiff in *Austin,* he has pushed his claim at every stage of the process. Plaintiff's contention raises the type of problem, noted by Judge Widener in *Austin,* of the "tension between collective representation and statutory rights." *Austin,* 78 F.3d at 882–83, n. 2 (quoting *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1657). In *Austin,* Judge Widener resolved that tension in favor of

collective rights, writing that "[s]o long as the agreement is voluntary, it is valid, and . . . it should be enforced." *Id.* at 885.

In the case at bar, the entire arbitration provision, including the allocation to the union of the right to bind the employee to seek or not to seek arbitration would appear valid. Thus, the plaintiff employee in this case is seemingly not entitled to seek arbitration at this time, even if plaintiff was so seeking, which plaintiff is apparently not doing. But the question remains as to whether the company and the union can, by entering into an arbitration provision of the type involved in this case, bar the employee from having his day in court on the merits of the employee's claim under a statute such as the ADEA, particularly when plaintiff can also, without his consent, be barred from arbitration, as is the case herein. That is an issue concerning which this Court has found little case authority or other guidance. Assuming *arguendo* only that the plaintiff herein is not so barred, this Court will reach the merits of plaintiff's said claim. Concluding as it does that the claim lacks merit and that defendant is entitled to summary judgment with respect to it, this Court will not decide whether or not the union's decision not to arbitrate bars an employee such as plaintiff from his day in court on the merits of his ADEA claim, particularly when the arbitration clause also gives the union the right to decline arbitration even if the employee wants to proceed to arbitration.[5]

---

5. *Martin Marietta v. Maryland Commission on Human Relations,* 38 F.3d 1392 (4th Cir.1994) does not require any different approach by this Court. In that case, the Fourth Circuit determined that the Labor Management Relations Act (LMRA) did not preempt state law claims of disability discrimination. In reaching that conclusion, Judge Restani rejected the company's argument that the arbitration provision in the collective bargaining agreement precluded the state law action. The arbitration provision in *Martin Marietta,* as in this case, encompassed only grievances involving "interpretation or application" of the CBA. In that regard, Judge Restani wrote that "what distinguishes *Gilmer* from the instant case is that the broad mandatory language of the arbitration clause at issue in *Gilmer* . . . provided that Gilmer must arbitrate 'any dispute, claim or controversy' arising with his employer. The CBA arbitration clause [in *Martin Marietta*] is more narrow, as it is written in permissive terms and encompasses only griev-

ances that involve 'interpretation or application' of CBA provisions." *Id.* at 1402.

That distinction could arguably apply in this case. However, *Martin Marietta* arose in a different context—namely, a dispute over whether the LMRA preempted the state law claims. Furthermore, *Martin Marietta* was a dispute over whether a disabled person was receiving proper accommodation pursuant to the Americans with Disabilities Act; it did not involve a disciplinary proceeding, which normally would be governed by a CBA and which is governed by the CBA in the within case. Also in *Martin Marietta,* Judge Restani concluded that the arbitration clause in *Gilmer* was permissive, rather than mandatory. Those differences distinguish *Martin Marietta* from the within case. In any event, as stated in the body of this opinion, this Court does not need herein to decide whether plaintiff is barred, from having his day in court on the merits of his claim, by the union's decision not to arbitrate.

## IV

Summary judgment is appropriate when "there is no genuine issue of material fact and [when] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Any party resisting summary judgment must "go beyond the pleadings and by [its] own affidavits, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

To establish a claim of discrimination in violation of the ADEA, plaintiff must prove that "but for the age of the plaintiff, the adverse employment decision would not have been made." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1314 (4th Cir.1993). A plaintiff may state a prima facie case by showing that "(1) he was in the protected age group; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) following the discharge, he was replaced by an individual of comparable qualifications outside the protected class." *Id.* at 1315. Alternatively, a plaintiff may show that "(1) plaintiff is a member of a protected class; (2) the prohibited conduct in which plaintiff was engaged was as serious as the misconduct of employees outside the protected class; and (3) the employer imposed harsher disciplinary measures against plaintiff than against employees outside the protected class." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir.1994) (Title VII case), citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir.1993) (same). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its actions. If

the defendant so shows, the burden shifts back to the plaintiff to show that the proffered reasons are merely a pretext for discrimination. *Mitchell*, 12 F.3d at 1314–15.

Plaintiff appears to be proceeding solely under the latter theory discussed *supra*—namely, that he was disciplined more severely for refusing to climb the tree than was Mr. Hopwood.[6] Plaintiff has failed to establish a prima facie case under that theory because he has not shown that Mr. Hopwood engaged in comparable misconduct. First, Mr. Hopwood's alleged refusal to climb the tree was not comparable misconduct because plaintiff and Mr. Hopwood were not similarly situated employees. Mr. Hopwood was a trainee inexperienced in climbing. Plaintiff was a journeyman whose job responsibilities included climbing difficult trees and helping train less experienced employees like Mr. Hopwood, if necessary by accompanying them up trees to ensure their safety and, if need be, to do the job himself and demonstrate how the job was to be appropriately performed. Defendant legitimately could expect plaintiff to climb trees which Mr. Hopwood was not capable of climbing safely. Second, between January, 1992 and September, 1993, plaintiff received four written warning notices for various types of misconduct, including engaging in arguments and failing to show up for work. Plaintiff has produced nothing to indicate that any similar record of misconduct existed for Mr. Hopwood. In short, the undisputed record indicates that plaintiff's misconduct was more serious than any alleged misconduct by Mr. Hopwood, and, thus, plaintiff has failed to establish a prima facie case of discrimination in violation of the ADEA.

## V

Plaintiff has not alleged any violation of the federal Labor Management Relations Act (LMRA), § 301, 29 U.S.C. § 185(a), against the union for failure to seek arbitration on his behalf, nor has plaintiff moved to join in this case the union as a defendant. Such an action under § 301 against the un-

6. Plaintiff has made no representation, for example, that he was replaced by someone outside the protected class.

ion—or against the union and/or the company—would not appear to be barred by the applicable statute of limitations. *See Dameron v. Sinai Hospital of Baltimore, Inc.,* 595 F.Supp. 1404, 1412 (D.Md.1984) (applying Maryland's three-year statute of limitations in an action under § 301). As to the substance of such a § 301 action, even if it is permissible for a union and an employer to include in an arbitration clause in a CBA the power to the union to prevent arbitration, the union—and the company—are required by the LMRA properly to perform their respective duties, including the duty of the union appropriately and fully to represent each employee member of the union. Herein, there is no indication that the union's desire not to seek arbitration was not made in good faith and with all diligence and with full performance of the union's duties to the plaintiff.

### VI

Defendant's motion for summary judgment is hereby granted.