Audrey SMITH

v.

UNITED PARCEL SERVICE, INC., et al.

Civil Action No. WMN–95–3182.

United States District Court,
D. Maryland.

Nov. 18, 1996.

Richard Hugh Semsker and Lippman & Associates of Washington, DC, for plaintiff.

Emmett F. McGee, Jr. and Patricia A. Sumner, of Baltimore, MD, for defendants.

## MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is the Motion for Summary Judgment of Defendant United Parcel Services, Inc. ("UPS"), Paper No. 9,

and UPS's Motion to Strike the Affidavit of Rose Marie Tierney, Paper No. 15. Plaintiff has opposed both motions. Paper Nos. 12 and 16. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that UPS's Motion for Summary Judgment will be granted in part and denied in part. UPS's Motion to Strike the Affidavit of Rose Marie Tierney will be denied as moot.

## I. BACKGROUND [1]

Plaintiff Audrey Smith is a female employee of UPS. She has worked as a part-time sorter and bagger at the "small sort" department of the UPS hub facility in Burtonsville, Maryland since March of 1992. UPS employees at the hub facility are represented by Local 639 of the International Brotherhood of Teamsters ("Union") and are covered by a collective bargaining agreement ("CBA") negotiated between UPS and the Union.

Plaintiff had two supervisors, Defendant Tom Dewitt and Chuck Warfield, who is not a defendant. Warfield and Dewitt were supervised by Kenny Wong who was, in turn, supervised by Darlene Martinuzzi. Wong and Martinuzzi had authority to hire, fire and impose disciplinary action. Warfield and Dewitt did not have such authority but were authorized to grade Plaintiff's performance, monitor her work and change the location of her work.

During the latter half of 1993, Dewitt asked Plaintiff to go out with him socially on several occasions, and Plaintiff refused his requests.[2] Plaintiff told Dewitt that she was not interested in a romantic relationship with him, but that they could be friends. In the fall of 1993, Dewitt spent the night at Plaintiff's house on one occasion because he had consumed too much alcohol to drive himself

home. Dewitt and Plaintiff did not have sexual relations on that occasion.

In December of 1993, Wong had a party at his house to which a number of UPS employees were invited including Plaintiff and Dewitt. Plaintiff and Dewitt left the party at approximately the same time and, when Plaintiff arrived at her house, Dewitt was waiting in his car for her. Seeing that Dewitt was too drunk to be driving, Plaintiff invited him in and went to get him a glass of water. When Plaintiff returned, Dewitt had fallen asleep and she could not rouse him. Plaintiff fell asleep on the floor next to Dewitt, planning to wake him in a couple of hours after he slept off the alcohol.

When Plaintiff woke up, Dewitt was on top of her with his pants down. Plaintiff was very upset, feeling that she had been raped or at least sexually assaulted. She kicked Dewitt out of her house and subsequently told him never to come to her house again.

Shortly thereafter, in January of 1994, Plaintiff received a note on her car, which she knew to be in Dewitt's handwriting, which she felt was meant to threaten her.[3] Dewitt also began saying things like "I will fix you" and "I will get you" to Plaintiff at work. Dewitt made comments at work about Plaintiff's breasts and buttocks. On numerous occasions at work, Dewitt made lewd gestures to Plaintiff with his hand on his crotch. On another occasion at work, Dewitt handed Plaintiff a package and when she took it, he grabbed her breast. Plaintiff begged Dewitt to stop harassing her, but he just laughed at her obvious distress.

In January of 1994, Plaintiff learned that she was pregnant.[4] In March, just as her pregnancy was beginning to show, she injured her back at work, and she was told by her physician that she was not to do any

---

1. In this recitation of the facts, the Court resolves all factual disputes in favor of Plaintiff, the non-moving party, as it must in ruling on a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 887, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

2. Dewitt states, by contrast, that he and Plaintiff dated and had a consensual sexual relationship which they mutually agreed to end sometime in 1994.

3. The note said "Audrey, Nice Knowing you. Take care, but cross me ever again, and . . . no more Mr. Nice Guy. P.S. Just let it be. U no who! Don't call, Don't ask."

4. Plaintiff's pregnancy was caused by someone other than Dewitt.

heavy lifting. Dewitt ignored Plaintiff's medical restrictions and continued to place her on bagging duty which required heavy lifting. Plaintiff complained to a Union official that Dewitt was making her perform work that her doctor had told her not to do.

For several months, Plaintiff continued to work notwithstanding the pain in her back and chest. As Plaintiff's pregnancy began to show more fully, Dewitt's behavior toward her worsened. He told her he wanted to put his hands on her breasts and then put his hand on his crotch. He also threw boxes at her feet and legs. He laughed as the boxes they were handling would hit her stomach. He called her names including "bitch," "slut" and "whore" and called her unborn child a "bastard."

In June of 1994, Plaintiff went to Martinuzzi and complained that Dewitt was harassing her and tampering with her time cards. Plaintiff did not tell Martinuzzi the details of Dewitt's harassment. Martinuzzi did not take Plaintiff's complaints seriously and told Plaintiff she should "go home and take care of that baby." Due to Plaintiff's emotional problems, back injury and pregnancy, Plaintiff went on disability leave on or about June 22, 1994 and has not returned to work at UPS since that time.

In November of 1994, Plaintiff started seeing a psychotherapist named Rose Marie Tierney, meeting with her for one hour per week, and more recently twice a week. Plaintiff's current diagnosis is Major Depressive Disorder, Recurrent, Severe with Psychotic Features. Her symptoms include sleep disorder and nightmares, confusion and isolation, difficulty attending to her family, negative self-image, hearing voices and suicidal ideation.

In October 1995, Plaintiff filed the instant lawsuit which includes the following three counts of sex discrimination against U.P.S. under Title VII:[5] hostile work environment, quid pro quo sexual harassment, and retaliation. The Complaint also includes three counts under Title VII against Dewitt, and one count against both Dewitt and UPS for intentional infliction of emotional distress. UPS filed an answer.[6] The parties engaged in written discovery and held depositions. After the Fourth Circuit ruled earlier this year in the case of *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), UPS filed the instant motion, arguing that the Fourth Circuit's analysis in *Austin* mandates the entry of summary judgment on Plaintiff's Title VII claims. The parties agreed to stay further discovery pending the instant ruling.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552. (citations omitted).

If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel*

---

5. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

6. Dewitt has not answered, nor has an attorney entered an appearance on Dewitt's behalf. The instant motion addresses only the claims against UPS.

*Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir. 1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

With these principles in mind, the Court will address the arguments presented by the parties.

### III. ANALYSIS

#### A. Title VII Claims Against UPS

■ The parties disagree as to the impact on this case of the Fourth Circuit's recent decision in *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996). In *Austin,* a discharged employee filed suit against her former employer for violating Title VII and the Americans with Disabilities Act. The Fourth Circuit, citing the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that arbitration of the plaintiff's Title VII and disability claims was mandatory under the applicable collective bargaining agreement ("CBA"). Consequently, the plaintiff could not sue her employer without first pursuing arbitration of her discrimination claims.

In the instant case, Plaintiff is also subject to a CBA. The CBA prohibits discrimination on the basis of sex by UPS or the Union. Paper No. 9, ex. 4 at 75. The CBA further provides for mandatory and binding arbitration of grievances that cannot be resolved through an initial grievance procedure. *Id.* at 14–19. Therefore, under *Austin,* it initially appears that Plaintiff's Title VII claim should be dismissed, without prejudice to the merits of the claim asserted, for her failure to comply with the arbitration requirement of the CBA. *See* 78 F.3d at 886.

Plaintiff argues that the instant case can be distinguished from *Austin.*[7] First, Plaintiff argues that, unlike the plaintiff in *Austin,* she did attempt to exhaust the grievance procedure set forth in the CBA. Said grievance procedure initially requires that the following steps be taken: a) that the employee report the grievance to her shop steward in writing within five days of the alleged breach; b) if the shop steward fails to resolve the matter with the grievant's supervisor, the shop steward shall report the matter to the Union which shall submit it in writing to the employer and attempt to resolve it within five days. If the matter still remains unresolved, it is submitted to a regional joint union-management grievance committee and ultimately to the Federal Mediation and Conciliation Service for binding arbitration. Paper No. 9, ex. 4 at 14–19.

Plaintiff claims that she filed a written grievance with the union which led to a meeting, in February of 1994, at which Plaintiff, Martinuzzi, Harry Weaver, Warfield and Todd Newton, a Union steward, were all present. During the meeting Plaintiff reported that she was being "harassed" by one of her direct supervisors. When Warfield asked Plaintiff "is it me?", Plaintiff said it was not, thereby allegedly identifying Dewitt by process of elimination.

Plaintiff admits that nothing about sexual harassment or sex discrimination was mentioned in her alleged written submission[8] to

---

7. Plaintiff initially argued that *Austin* was wrongly decided and would possibly be overruled by the Supreme Court, requesting that the instant case be stayed pending the outcome of the Supreme Court's consideration of the matter. That request was rendered moot during the drafting of this opinion by the Supreme Court's denial of certiorari in *Austin v. Owens–Brockway Glass Container,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996).

8. Neither Plaintiff nor the Union has been able to locate the alleged writing, and the Union denies that Plaintiff ever filed it.

the Union[9] or in the meeting which followed with Martinuzzi et al. Instead, Plaintiff's complaints focused on being required to bag packages, which involved bending and lifting and was painful to Plaintiff because of her back injury, more than sort, which was apparently less painful.

Defendant argues, and the Court agrees, that there is a material difference between making a complaint that one is not being given a work assignment consistent with one's medical constraints and reporting that one is being sexually harassed by one's supervisor. While the former might provide the basis for some claim, such as under the Americans with Disabilities Act,[10] it does not provide a basis for employer liability on the sexual harassment claims pled by Plaintiff. Therefore, this distinction from *Austin* is immaterial, under the facts of the present case, because Plaintiff's invocation of the grievance procedure did not give rise to a meritorious claim for sexual harassment against UPS. *See Chenowith v. Asplundh Tree Expert Co.*, 928 F.Supp. 605, 609 (D.Md. 1996) (assuming without deciding that plaintiff would be able to bring discrimination action, notwithstanding *Austin*, if plaintiff had invoked grievance procedure as required by the CBA, but finding that plaintiff's claim lacked merit).

Plaintiff further argues, however, that the requirement that an employee may not bring a civil action without having first pursued arbitration works an unjust result where the union does not fairly represent the employee's interests. *DelCostello v. Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). In such a case, an employee suing an employer for breach of the CBA must show not only that the employer's action was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union, whether or not the employee chooses to also sue the union. *Id.* at 165, 103 S.Ct. at 2291.

In July of 1994, after Plaintiff went on disability leave, she allegedly spoke to John Catlett, Secretary/Treasurer of Local 639, and told him in detail of the sexual harassment she had experienced from Dewitt including the name-calling and lewd gestures. Plaintiff also told Catlett she had contacted an attorney about the matter. Catlett allegedly advised her to let the attorney handle the situation.

Although Catlett's affidavit does not reflect any recollection of such a conversation, the Court must assume Plaintiff's version of the facts to be true at this stage. There appears, then, to be a factual dispute as to whether Plaintiff's actions were sufficient to put the Union on notice of the need to assist Plaintiff with filing an appropriate grievance. Thus, this case may be distinguished from *Austin* where no question of union good faith was raised. *See* 78 F.3d at 885.

In *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Supreme Court reiterated its earlier holding that an employer may not insist on exhaustion of grievance procedures when the union has breached its duty of fair representation under the National Labor Relations Act. *Id.* at 567, 96 S.Ct. at 1057–58 (citing *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). The Court further held that the employee does not lose an otherwise valid cause of action against the employer merely upon a finding that the union breached its representation duty vis a vis the employee. *Id.* at 570, 96 S.Ct. at 1059.[11]

**9.** Plaintiff testified that she reported in the written grievance that she was being harassed by her supervisor who was throwing boxes and forcing her to bag more than sort.

**10.** 42 U.S.C. § 12101 *et seq.*

**11.** Defendant argues here that, even had Plaintiff shown that she met the requirements of the grievance procedure, or that it was the Union's fault that she had not done so, Plaintiff's Title VII claim would still have to be dismissed because Plaintiff would have had to bring a "hybrid action" (breach of contract against the employer under § 301 of the Labor Management Relations Act/breach of duty of fair representation against the Union) rather than a Title VII claim. The Court disagrees. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974), the Supreme Court held that an employee's right to bring a Title VII action is not foreclosed by prior submission of the claim to final arbitration under the terms of the CBA. *Alexander* was distinguished in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S.Ct. 1647, 1656–57, 114 L.Ed.2d 26 (1991),

Again the factual dispute over the Union's failure to act is only material if Plaintiff has an action against the employer which would have been valid but for the lack of arbitration. To show some basis for imposing liability on UPS, Plaintiff must establish the employer's knowledge of the sexual harassment by showing that "complaints about the harassment were lodged with the employer or that the harassment was so pervasive that employer awareness may be inferred." *Katz v. Dole,* 709 F.2d 251, 255 (4th Cir.1983). It is undisputed that Plaintiff did not inform management herself about the sexual nature of the harassment she was experiencing, nor did the Union inform UPS through the grievance process or otherwise.

The question, then, is whether the harassment was so pervasive that employer awareness may be inferred. Because the parties have not briefed this question, and because discovery in this matter was stayed pending a ruling on the question of whether *Austin* mandated summary judgment for UPS in this case, the Court will not decide this question now. Viewing the facts most favorably to the non-moving party, Plaintiff has made a sufficient showing that this case is distinguishable from *Austin* that UPS's motion will be denied.

## B. Intentional Infliction of Emotional Distress

██ Section 301 of the Labor Management Relations Act (LMRA) provides a federal cause of action for violations of collective bargaining agreements. 29 U.S.C. § 185(a). Section 301 preempts state law claims which arise under the terms of a CBA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 219, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). This result obtains in order to preserve employees' federal right to decide that contract

disputes will be resolved through arbitration. *Id.*

██ Whether a particular claim is preempted depends on the elements of the claim and whether the resolution of those elements requires an interpretation of the relevant provisions of the CBA. The elements that must be present to impose liability for intentional infliction of emotional distress are now well established. The plaintiff must prove: (1) defendant's conduct was reckless or intentional; (2) that conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Batson v. Shiflett,* 325 Md. 684, 734, 602 A.2d 1191 (1992).

██ Plaintiff's claims of extreme and outrageous conduct as to UPS include all of the above-described acts of sexual harassment by Dewitt, UPS's failure to stop Dewitt's harassment, UPS's failure to insure that Plaintiff's doctor's restrictions were complied with regarding Plaintiff's work assignments, and UPS's continued insistence that Plaintiff perform bagging even though this task was not compatible with Plaintiff's physical condition. Absent the sexual harassment for which Defendant claims it cannot be held liable, evaluation of whether the remaining conduct qualifies as "extreme and outrageous" requires an interpretation of UPS's obligations under the CBA regarding work assignments, transfers and medical restrictions. The CBA specifically addresses UPS's rights and obligations with respect to disability leaves, medical examinations and an employee's return to work after an injury, job assignments, and UPS's obligation to provide a modified work program to those employees who are unable to perform their normal work

where the Supreme Court held that a contractual agreement to submit discrimination claims to arbitration is enforceable, on the grounds that *Alexander* treated a collective bargaining agreement not an individual employment contract. Although the *Austin* decision appears to undo the careful distinction drawn in *Gilmer,* the Fourth Circuit explained in *Austin* that by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute,

it just submits to their resolution in an arbitral rather than a judicial forum. The Fourth Circuit did not state that the plaintiff's cause of action under Title VII was improper per se, just that it was improper to bring it before or instead of complying with the arbitration provision. It appears then that where a party makes a colorable argument that the arbitration mechanism has failed, she may bring a claim under Title VII.

assignment due to on-the-job injury. *See* Paper No. 9, ex. 4 *passim*.

Whether or not Plaintiff's intentional infliction of emotional distress claim against UPS is preempted under § 301 of the LMRA thus depends on whether UPS can be held responsible for the acts of Dewitt. Defendant argues that "UPS cannot be held vicariously liable for the intentional torts of a low level employee like Dewitt who was acting outside the scope of his employment and for purely personal reasons." Paper No. 9 at 11. Defendant argues that Dewitt's actions were outside the scope of his employment because the harassment was not in furtherance of UPS's business and was not authorized by UPS. *Sawyer v. Humphries*, 322 Md. 247, 255, 587 A.2d 467 (1991).

Plaintiff argues in response that UPS condoned Dewitt's behavior, citing *Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), or ratified Dewitt's conduct toward Plaintiff, citing *Lee v. Pfeifer*, 916 F.Supp. 501, 507–08 (D.Md.1996). Knowledge of all material facts on the part of the master is a prerequisite for ratification in Maryland, however. *Id.* It does seem from Plaintiff's allegations that UPS supervisors did not take Plaintiff's complaints regarding her work assignments seriously enough considering her documented medical condition and her apparent emotional distress. Nevertheless, Plaintiff testified that she did not inform anyone at UPS about the sexual assault or about the sexual nature of the harassment she experienced at work from Dewitt, and that the only aspect of his "harassment" that she complained of to UPS was specific to the work assignment problem. Thus, UPS did not have knowledge of all material facts and did not ratify Dewitt's sexual harassment of Plaintiff.

Moreover, the language Plaintiff quotes from *Paroline*, concerns imputed liability under Title VII and not under a common law intentional tort. A broader view of vicarious liability is appropriate under Title VII given the legislative intent to remedy employment discrimination. *See Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 657 (4th Cir.1990) (distinguishing vicarious liability under Title VII and under common law torts).

Finally, Plaintiff responds to the dispositive issue of whether Dewitt's actions were within the scope of his employment. *See Embrey v. Holly*, 293 Md. 128, 133, 442 A.2d 966, 969 (1982). Plaintiff argues that Dewitt's conduct was in furtherance of UPS's business because some of the harassment occurred when Dewitt monitored Plaintiff's work performance, threw boxes at Plaintiff, made Plaintiff work even though she was in pain and harassed her about the speed with which she was working. Assuming arguendo that UPS could be held liable for these specific actions of Dewitt's as acts in furtherance of UPS's business,[12] this just gets Plaintiff back to the LMRA § 301 preemption problem discussed above because these specific actions are closely enough related to UPS's duties under the CBA so as to preempt a state action on these grounds. *See Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912 (where evaluation of the state tort claim is "inextricably intertwined with consideration of the terms of the labor contract," the action is preempted). Therefore, summary judgment will be granted to UPS on the intentional infliction of emotional distress claim.

### C. Affidavit of Rose Marie Tierney

UPS moves to have stricken the affidavit of Rose Marie Tierney on the grounds that Plaintiff did not comply with the rule regarding expert disclosures, that the affidavit contradicts Tierney's deposition testimony and that Tierney's opinion is not substantiated with facts. Plaintiff contests all of these claims. The Court does not need to resolve this dispute. The significance of the Tierney affidavit is on the causation element of Plaintiff's claim of intentional infliction of emotional distress against UPS. As judgment will be entered in favor of UPS on that claim, UPS's motion to strike the affidavit will be denied as moot.

### IV. CONCLUSION

For all the above-stated reasons, Defendant UPS's motion for summary judgment

---

**12.** Such an assumption would not extend to the act of throwing boxes at Plaintiff which cannot reasonably be viewed as being in furtherance of UPS's business.

will be granted in part and denied in part. The motion will be denied as to Plaintiff's Title VII claims against UPS. Judgment will be entered in favor of UPS on the claim of intentional infliction of emotional distress. UPS's motion to strike the affidavit of Rose Marie Tierney will be denied as moot. A separate Order will issue.