Henry C. MOORE, Jr., Plaintiff,

v.

DUKE POWER COMPANY, Defendant.

No. 3:94–CV–292–MU.

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 29, 1997.

William H. Sturges, Shumaker, Loop & Kendrick, Charlotte, NC, for Plaintiff.

Philip M. Van Hoy, Paul B. Taylor, Van Hoy, Reutlinger & Taylor, Charlotte, NC, for Defendant.

## ORDER

MULLEN, District Judge.

This matter is before the Court upon Defendant's motion for summary judgment, filed August 22, 1995.

### I.   Procedural History.

On July 20, 1994, Plaintiff filed suit in Mecklenburg Superior Court against Defendant for violations of the Americans With Disabilities Act ("ADA") and of the North Carolina public policy against disability discrimination.   Plaintiff alleges that Defendant wrongfully refused his transfer requests and removed, demoted, suspended, and terminated him due to his disabilities.   On August 18, 1994, Defendant removed the action to this Court.

On February 22, 1995, the Court stayed discovery pending resolution of legal defenses raised by Defendant and pending arbitration of Plaintiff's claims.[1]   After the stay was lifted, Defendant moved for summary judgment, but the action was stayed again pending the Fourth Circuit's decision in *Austin v, Owens–Brockway*.   On December 10, 1996, after resolution of *Austin*, 78 F.3d 875 (4th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996), the stay was again lifted.   The parties completed briefing on Defendant's motion for summary judgment on April 25, 1997.   On May 22, 1997, the Court conducted a hearing regarding the motion.

---

1.   On March 9, 1995, the arbitrator denied Plaintiff's grievance regarding his termination.

## II. Statement of the Case.

### A. Summary of Facts.

Plaintiff was employed by Defendant in 1971. He began as a meter reader and was promoted to line helper and then distribution line technician. On September 30, 1989, Plaintiff, performing an on-the-job repair, was injured in an electrical explosion. As a result, Plaintiff's doctor evaluated him as having a 71% disability rating.

Following the explosion, Plaintiff was out of work for an extended period of time. After Plaintiff returned to work in 1990, he was demoted (1991–92), denied transfers (1992–93), suspended (August 30, 1993), and finally terminated on September 30, 1993. Plaintiff claims Defendant took such actions because of his disability. Defendant claims it took such actions because of Plaintiff's poor work performance, including leaving work without permission and lying about his whereabouts.

Plaintiff complained to the company about his suspension and was told he could challenge the action through the company's recourse or grievance procedures. Plaintiff initially chose the recourse procedure but then decided to pursue the grievance option, pursuant to the terms of the Collective Bargaining Agreement ("CBA") entered into by Plaintiff's union ("the Union") and Defendant. On September 21, 1993, the Union filed a grievance on Plaintiff's behalf, but Defendant told the Union that it was filed too late.

After Plaintiff was fired, the Union filed a grievance with Defendant on September 30, 1993, and Plaintiff filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP") on October 13, 1993, as a result of which he received a right-to-sue letter. Defendant denied the grievance, and the Union requested arbitration contending that Defendant violated the terms of the CBA.[2] The Union representative allegedly told Plaintiff he would address Plaintiff's disability claims in the arbitration, but then declined to do so and also prevented Plaintiff's attorney from participating in the arbi-

tration. On March 9, 1995, the arbitrator denied Plaintiff's grievance and found that he had been terminated for "just and proper cause."

### B. Defendant's Motion for Summary Judgment.

On August 22, 1995, Defendant moved for summary judgment, arguing that:

(1) Plaintiff's removal, demotion, and transfer claims are time-barred in that Plaintiff failed to allege such claims in a complaint with the Equal Employment Opportunity Commission ("EEOC") or the OFCCP within 180 days of their alleged occurrences, as required by law, 42 U.S.C. § 12117(a) and § 2000e–5(e)(1);

(2) Plaintiff's state common law claim is barred by the preclusive effect of the grievance and arbitration procedures set forth in the CBA and by operation of N.C.G.S. § 95–36.8 (giving preclusive effect to binding arbitration decisions) and section 301 of the Labor Management Relations Act ("LMRA") (taking precedence over suits for violation of contracts between an employer and a labor organization); and,

(3) Plaintiff's termination claim under the ADA has already been submitted to final and binding arbitration and Plaintiff lost in arbitration.

### C. Plaintiff's Response.

After the Fourth Circuit decided *Austin* and the stay was lifted, Plaintiff filed, on February 7, 1997, a brief opposing Defendant's motion for summary judgment. Plaintiff asserts that there are genuine issues of material fact concerning both his ADA claim and his claim under North Carolina common law for wrongful discharge in violation of public policy, arguing that:

(1) The grievance and arbitration provisions of the CBA do not bar his ADA claim;

(2) His suspension and termination claims were timely filed with the OFCCP

---

2. Before the arbitration took place, Plaintiff retained private counsel and, in July of 1994, filed

the instant lawsuit.

and his other claims should otherwise not be time-barred for equitable and other reasons; and,

(3) Neither NCGS § 95–36.8 nor section 301 of the LMRA preempt his state law claim.

Plaintiff argues that arbitration clauses in CBA's cannot prospectively waive the right to court adjudication of statutory civil rights claims (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). Plaintiff maintains that *Austin* is limited to its facts and does not address a situation, such as here, where a claimant has already attempted arbitration but the process was faulty. *See Smith v. United Parcel Service, Inc.,* 947 F.Supp. 190, 194 n. 11 (D.Md.1996) "( [W]here a party makes a colorable argument that the arbitration mechanism has failed, she may bring a claim under Title VII."). Plaintiff states that, in any event, a genuine issue of material fact exists as to whether Defendant and the Union agreed to arbitrate ADA claims and whether arbitration is final and binding as to Plaintiff.

In the alternative, Plaintiff asserts that he arbitrated his contract claims under the CBA but that his disability discrimination claims were not heard by the arbitrator, constituting a breach of the duty of fair representation, and thus were not barred by the CBA or should not be barred under principles of equity. Plaintiff also contends his other claims are not time-barred because they are part of a "continuing violation" by Defendant.

Plaintiff argues that NCGS § 95–36.8 does not apply here in that it is preempted by the Federal Arbitration Act ("FAA"), which evidences Congress' intent not to subject arbitration clauses entered into via CBA's to the FAA's broad-sweeping rules. In the alternative, Plaintiff asserts that the Court should use the plain language of NCGS § 95–36.8's equity exception to allow court adjudication of Plaintiff's state law claims. Finally, Plaintiff contends that section 301 of the LMRA does not preempt his state law claims because the claim is not inextricably intertwined with consideration of the terms of the CBA.

### D.   Defendant's Reply.

On March 27, 1997, Defendant filed a reply brief arguing that the Fourth Circuit's decision in *Austin* requires the Court to grant Defendant summary judgment. Defendant asserts that *Austin* permits a union, as here, to prospectively waive an employee's right to choose a judicial forum for a statutory claim by agreeing to take all matters arising under a CBA to "final and binding" arbitration. Defendant maintains that the CBA here clearly encompasses Plaintiff's disability discrimination claims. Defendant distinguishes *Smith,* stating that, unlike the present case in which Plaintiff's pending ADA suit was stayed pending the completion of arbitration, *Smith* involved a situation in which grievance and arbitration procedures were completed before the plaintiff filed a federal lawsuit. Because Plaintiff's suit was stayed after he filed a disability discrimination suit and pending arbitration, Defendant argues that Plaintiff cannot now complain about the Union's alleged failure to present such claims at the arbitration. Finally, even if the Court were to assume that the disability claim was not fully or fairly presented at arbitration, Defendant contends that Plaintiff cannot show any evidence different from what he presented unsuccessfully in arbitration.

Defendant also argues that Plaintiff's removal, demotion, transfer, and suspension claims were never submitted to the grievance and arbitration procedures of the CBA and therefore must be dismissed under *Austin.* In any event, Defendant contends that the removal, demotion, and transfer claims are time-barred and do not comprise the type of discriminatory policy or practice necessary for a finding of a continuing violation.

Defendant maintains that Plaintiff's state law claims should be dismissed because of the binding arbitration. In the alternative, Defendant argues that section 301 of the LMRA pre-empts the state law claims and that, because the FAA does not apply to CBA's, the North Carolina Arbitration Act also preempts the state law claims. For the first time, Defendant also asserts that the Court should abstain from hearing the state law claims because Plaintiff has an adequate remedy in state court and it would be im-

proper for this Court to make law on this newly created claim before state courts did.

### E. Plaintiff's Supplemental Reply.

On April 25, 1997, Plaintiff filed a brief addressing only Defendant's abstention argument, raised for the first time in Defendant's reply brief. Plaintiff argues that Defendant's cases on this issue are inapposite and that general principles of the abstention doctrine prohibit the state law cause of action from being excluded from the federal courts in that North Carolina law on common law wrongful discharge claims in violation of public policy is not unclear.

### F. Oral Argument.

On May 22, 1997, the Court heard oral argument regarding Defendant's motion for summary judgment.

#### 1. Defendant's Argument.

At the hearing, Defendant declined to elaborate on its arguments in favor of summary judgment regarding Plaintiff's non-termination-related claims, preferring instead to rely on the arguments it raised in the briefs. However, Defendant did add to its contentions regarding Plaintiff's claims based on his termination. Defendant stated that *Austin* stands for the proposition that: Plaintiff was obligated to arbitrate his claims; he did so through his union representative and lost; and the arbitrator's decision was final and binding on Plaintiff. Furthermore, Defendant contended that what Plaintiff is actually complaining about is that his union failed to adequately represent him on his disability discrimination claim but that he is unable, under *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) and the Fourth Circuit cases that interpret Hines, to establish that the Union's misrepresentation should enable him to escape the binding effect of the arbitrator's decision. Defendant cited, for example, *Ash v. United Parcel Service, Inc,* for the propo-

sition that, in order to overturn the binding effect of the arbitrator's decision, Plaintiff:

> [M]ust establish that the union handled his grievance perfunctorily or in bad faith and that "there is substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings."... Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty.... Rather, the union's conduct must be "grossly deficient" or in reckless disregard of the member's rights.

800 F.2d 409, 411 (4th Cir.1986) (citations omitted). Based upon this standard, Defendant argued that Plaintiff cannot produce sufficient evidence of union misconduct or of the prejudicial effect such alleged misconduct had on the arbitral process to overcome the final and binding effect of the arbitrator's decision.

#### 2. Plaintiff's Argument.

At hearing, Plaintiff maintained that *Austin* is distinguishable from the instant case in that *Austin* does not discuss what is supposed to happen when, as here, arbitration has already taken place and that *Austin* involved a CBA that made direct reference to claims under the ADA while the CBA here only mentions in its preamble discrimination due to "handicap." Instead of *Austin*, Plaintiff argued that the controlling case is *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), which holds that a union cannot prospectively waive a member's Title VII rights in a CBA and that an employee subject to "final and binding" arbitration may still pursue remedies through both arbitration of the CBA nondiscrimination clause and litigation of the Title VII claim.[3] Plaintiff also contended that the LMRA's strong preference for upholding the final and binding effect of arbitration as agreed in CBA's applies to state law claims only.

---

**3.** Defendant attempted to distinguish *Alexander* in its initial brief in support of its motion, contending that: (1) *Alexander* was decided before enactment of the ADA, which specifically endorses the settlement of claims through arbitration and other alternative means of dispute resolution; and (2) the Supreme Court held in *Gilmer*

*v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), that an agreement to arbitrate employment disputes may be enforced to the exclusion of an individual's right to file a lawsuit under the Age Discrimination in Employment Act.

Finally, Plaintiff argued that the CBA here precluded him from access to the grievance process without the Union's representation and that, as a result, his disability discrimination claim has yet to be heard in any forum. Even though some evidence of Plaintiff's medical condition and disabilities came in at arbitration, Plaintiff contended that it was never considered in the context of whether or not he was discriminatorily terminated as a result of his disability.

## III. Analysis.

### A. Summary Judgment Standard.

Rule 56 of the Federal Rules of Civil Procedure directs that summary judgment be entered when a moving party shows "that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." The nonmoving party must make a showing sufficient to establish the existence of each element essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) ("the *Celotex* rule"). The facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). The nonmoving party is entitled:

> [T]o have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf, and finally, to be given the benefit of all favorable legal theories invoked by the evidence as considered.

*Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

### B. Non-Termination Claims.

#### 1. Removal, Demotion, and Transfer Claims.

■ Plaintiff's claims based upon his removal and demotion and upon the denial of his transfer requests must be dismissed as a matter of law because Plaintiff failed to allege such claims in a complaint with the EEOC or the OFCCP within 180 days of their alleged occurrences, as required by statute, and because Plaintiff has failed to produce evidence sufficient to establish a "continuing violation" or to invoke equitable tolling of the statute of limitations. Even if these claims are not time-barred, Defendant is still entitled to summary judgment regarding these claims because Plaintiff failed to pursue them through the CBA's grievance procedures. Under *Austin,* an employee must follow the grievance procedure established by the CBA prior to filing suit in federal court: Because Plaintiff failed to exhaust his remedies under the CBA regarding these claims, he is precluded from raising them for the first time in a lawsuit.

#### 2. Suspension Claim.

■ Similarly, Plaintiff's claims based upon his suspension must be dismissed as a matter of law. Plaintiff, through the Union, attempted to pursue a grievance based upon his suspension, but the grievance was, according to Defendant, not timely filed under the terms of the CBA, thereby precluding Plaintiff's ability to pursue these claims further. There is evidence that Defendant may have been wrong about the timeliness of the grievance and that the Union did nothing to pursue the matter. However, even if the Union was at fault in not investigating Defendant's contention that the grievance was untimely, such evidence of the Union's actions does not implicate the level of grossly deficient conduct required under *Hines* and its progeny to relieve Plaintiff of the determinative effect of the CBA's contractual grievance procedures. *See* the Court's analysis in III.C. 1. below.

### C. Termination Claims.

#### 1. ADA Claim.

Defendant is entitled to summary judgment on Plaintiff's claim that he was discriminatorily terminated due to his disability, in violation of the ADA, because: (a) Plaintiff arbitrated his termination-related claims and lost; and (b) he cannot show that the Union's failure or refusal to raise his disability discrimination argument at arbitration was sufficiently deficient conduct under *Hines* and its progeny to relieve him from the binding effect of the arbitrator's decision that he was terminated for proper cause.

■ As a preliminary matter, the Court finds that the reference in the preamble of the CBA to discrimination on the basis of "handicap" indicates that the CBA was intended by the Union and Defendant to cover claims of disability discrimination in employment decisions, as here. Thus, Plaintiff's allegation that he was tired because of his disability was subject to the grievance and arbitration procedures of the CBA, and, under *Austin,* Plaintiff was required to pursue such claims according to those procedures. Plaintiff did submit his termination-related claims to "final and binding" arbitration under the terms of the CBA, but the arbitrator found that Defendant terminated Plaintiff for good cause.

■ Plaintiff may not pursue statutory claims based on his termination, by virtue of the final and binding nature of the arbitrator's decision, unless he can demonstrate that the Union breached its duty of representation and that such breach "seriously undermine[d] the integrity of the arbitral process...." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976). In *Hines,* the Supreme Court also stated that:

> [W]here the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is ... on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings.

*Id.* at 568, 96 S.Ct. at 1058. Expanding on *Hines,* the Fourth Circuit in *Hardee v. North Carolina Allstate Services, Inc.,* stated the following:

> Where a collective bargaining agreement provides procedures by which disputes are to be resolved, then the decision reached under these procedures is generally final and binding on the parties and will not be disturbed by the courts.... An exception to this rule is where the union has breached its duty of fair representation in its handling of a grievance.... Thus, where the grievance has been handled only perfunctorily or in bad faith and there is substantial reason to believe that a union

breach of duty contributed to an erroneous outcome in the contractual proceedings, the arbitral bar is removed.

537 F.2d 1255, 1258 (4th Cir.1976).

■ Thus, under the *Celotex* rule, Plaintiff's burden to withstand summary judgment is to produce evidence sufficient to create a genuine issue of material fact that the Union breached its duty of fair representation in handling his grievance and that "there is substantial reason to believe that a union breach of duty contributed" to the arbitrator's allegedly erroneous decision that Plaintiff was fired for good cause.

With respect to the first element, the Union's breach of duty of fair representation, the Fourth Circuit and district courts within this circuit have elaborated on the nature of the employer's conduct that Plaintiff's evidence must establish. In *Ash v. United Parcel Service, Inc.,* the Fourth Circuit stated that: "Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty.... Rather, the union's conduct must be 'grossly deficient' or in reckless disregard of the member's rights." 800 F.2d 409, 411 (4th Cir.1986) (citation omitted). In *Smith v. Local 7898, United Steelworkers of America,* the Fourth Circuit held that: " '[H]onest, mistaken conduct' does not violate the union's duty of fair representation.... A union's exercise of its judgment need not appear as wise in the glaring light of hindsight, and a violation of the duty of fair representation is not made out by proof that the union made a mistake in judgment." 834 F.2d 93, 96 (4th Cir.1987). In *Williams v. Air Wisconsin, Inc.,* the district court in the Eastern District of Virginia stated that "[t]he judiciary's evaluation of a union's performance 'must be highly deferential.' " 874 F.Supp. 710, 715 (E.D.Va.1995) (citation omitted).

Plaintiff argues that the Union's failure or refusal to raise his claim of disability discrimination at arbitration and refusal to allow his attorney to participate in the arbitration constitute a breach of the duty of fair representation. Plaintiff contends that the arbitrator never considered evidence of his claim of disability discrimination, that the Union was at fault for this omission, and that he should not now be deprived of the opportunity to pursue this claim.

The Court disagrees. Taken in the light most favorable to Plaintiff, the evidence establishes that the Union, at arbitration, either forgot to raise Plaintiff's concerns about disability discrimination or instead made a strategic decision not to pursue that aspect of Plaintiff's grievance regarding his termination. At best, such evidence establishes that the Union was negligent in its representation of Plaintiff or merely made a strategic error. There is no evidence that the Union handled Plaintiff's grievance perfunctorily or in bad faith.

Thus, Plaintiff's evidence is insufficient as a matter of law, under the cases cited above, to create a genuine issue of material fact that the Union breached its duty of fair representation of Plaintiff. Since there is no breach, the Court need not reach the second element of Plaintiff's attempt to overcome the arbitral bar, that there is "substantial reason" to believe a union breach contributed to an erroneous outcome at arbitration. In sum, Plaintiff cannot withstand summary judgment on his ADA claim and cannot escape the finality of the arbitrator's decision.

2. North Carolina Common Law Claim for Wrongful Discharge in Violation of Public Policy.

The Court adopts the same analysis it applied to Plaintiff's ADA claim to his North Carolina common law claim for wrongful discharge in violation of public policy. The latter claim is based upon Plaintiff's termination and alleged disability discrimination. As such, the claim is encompassed by the CBA's prohibition of discrimination on the basis of handicap, and, under *Austin*, Plaintiff was obligated to pursue this claim according to the CBA's procedures. Plaintiff did submit his termination-related claims to arbitration and lost. The arbitral decision is "final and binding" on Plaintiff by the terms of the CBA and the North Carolina Arbitration Act, N.C.G.S. § 95–36.8(b), and the Court finds that the statute's equity exception should not apply and that the statute is not pre-empted by the FAA. For the same reasons identified above regarding Plaintiff's ADA claim, the Court finds that Plaintiff cannot escape the binding effect of the arbitrator's decision and cannot now pursue his state law claim. Because the Court finds

that Defendant is entitled to summary judgment on this basis, the Court does not reach the merits of Defendant's arguments that Plaintiff's state law claim is pre-empted by section 301 of the LMRA or that the Court should abstain from deciding such claim.

IV. Conclusion.

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment is **GRANTED**. Plaintiff's complaint is **DISMISSED** with prejudice.